PALMER, J.
Chad Davis (defendant) appeals his convictions for trafficking in cocaine and conspiracy to traffic in cocaine. Determining that the evidence was insufficient to support the conspiracy conviction, we reverse that conviction. As to all other issues, we affirm.
The defendant was charged with two counts of trafficking in cocaine and one count of conspiracy to traffic in cocaine. The evidence at trial demonstrated that Robert Adams asked Major Moten to find out if the defendant had cocaine for sale. After confirming that the defendant did have cocaine to sell, Moten gave Adams the defendant’s telephone number. Adams and the defendant then planned, by phone, two one-kilogram cocaine transactions on consecutive days. They completed the second transaction. Adams later sold the cocaine to a third person. The jury found the defendant guilty of one count of trafficking in cocaine and of conspiracy to traffic in cocaine. The defendant argues the evidence was insufficient to prove conspiracy. We agree.
The standard of review of the sufficiency of the evidence is de novo. Pagan v. State, 830 So.2d 792, 803 (Fla.2002).
The offense of trafficking in cocaine occurs when a person “knowingly sells, purchases, ... delivers, ... or ... is knowingly in actual or constructive possession of, 28 grams or more of cocaine.” § 893.135(1)(b)1, Fla. Stat. (2008). Conspiracy to commit this offense occurs when a person “agrees, conspires, combines, or confederates with another person to commit any act prohibited by” the offense. § 893.135(5). In other words,
[t]he crime of conspiracy consists of an express or implied agreement between two or more persons to commit a criminal offense. Both an agreement and an intention to commit an offense are necessary elements of the crime.... [E]vi-dence that a defendant ... had knowledge of the crime ... or even aided others in the commission of the crime is insufficient, by itself, to support a con *342 spiracy conviction. Rather, the State’s evidence must show that the defendant entered into an agreement with another to commit the crime and intended to commit the crime.
Green v. State, 999 So.2d 1098, 1099 (Fla. 5th DCA 2009) (citations omitted).
Here, the State’s evidence was insufficient to establish conspiracy because it did not show an agreement between the defendant and any person to commit the same act of selling, purchasing, delivering, or possessing cocaine. Instead, the evidence simply established the planning and execution of a buy-sell transaction between the defendant and Adams.
The Fourth District addressed a legally similar situation in Schlicher v. State, 13 So.3d 515 (Fla. 4th DCA 2009), where the defendant was the purchaser of cocaine:
[T]he police were conducting an investigation, primarily through wiretaps, of a cocaine trafficking organization headed by Jose Tzoc-Caxaj (Jose). [The defendant] was not the target of the investigation, but came to be known to police when he purchased cocaine from Jose. [The defendant] admitted to police that he had purchased cocaine consistently from Jose for his own use, but maintained that he was not a drug dealer.
Id. at 516-17. The court held the evidence insufficient to establish conspiracy, reasoning:
Logic demands that the agreement that constitutes the conspiracy must be an agreement to commit the same criminal offense. In a buy-sell transaction, that agreement usually does not exist because the buyer and seller each intend to commit a different criminal offense. As a result, there is no criminal conspiracy to pursue a common goal. Such is the case here, where [the defendant] and Jose were on opposite sides of the drug transactions. Accordingly, there was no evidence of an express or implied agreement between [the defendant] and Jose to commit the common criminal offense of purchase of cocaine.
The State relies on Leigh [v. State, 967 So.2d 1102 (Fla. 4th DCA 2007)].... [That] case, however, is factually distinguishable .... In Leigh, two or more defendants were engaged in the sale or purchase of drugs from a third party. The defendants were convicted based on their conspiracies with co-defendants who were on the same side of the transactions. This Court reasoned that, in order to carry out either the joint purchase or the joint sale of drugs, there must have been a prior agreement among the defendants to achieve that sale, or else the sale would not have occurred. Here, there was no such agreement between [the defendant] and a co-conspirator on the same side of the transaction.
[[Image here]]
... [T]he State did not produce sufficient evidence that [the defendant] and Jose had an express or implied agreement to purchase cocaine, and that both shared the common intent to purchase cocaine. Rather, the State’s evidence established that the alleged co-conspirators had different criminal intents.
Id. at 517-19 (citations and footnote omitted; emphasis in original).
This analysis is consistent with our court’s ruling in O’Connor v. State, 590 So.2d 1018 (Fla. 5th DCA 1991). There, a confidential informant bought cocaine from the defendant. Prior to the transaction, the defendant told the informant that he would get the cocaine from someone named Nasty. The State argued that the evidence was sufficient to establish that the defendant conspired with Nasty to *343 traffic in cocaine. We disagreed, reasoning:
[Tjhere was no evidence to show ... that [the defendant] conspired with [Nasty], and there is no evidence of intent or agreement on that person’s part [that the defendant would resell the cocaine].
The state’s argument boils down to the theory that because [the defendant] had cocaine and sold it to [the informant], ... this necessarily shows the agreement of another party [that the defendant would resell it]. However, [the defendant] could have obtained the cocaine without such an agreement. If that type of analysis were sufficient, every person who sold drugs would also be guilty of conspiracy on the rationale that he must have gotten it from someone else.
Id. at 1020.
As in Schlicher, the evidence here failed to demonstrate any agreement or concurrent intent between the defendant and Adams to join in the same act of selling, purchasing, delivering, or possessing a particular item of cocaine. Rather, the evidence demonstrated that the defendant intended to possess and then to sell and deliver the cocaine, and Adams intended to purchase and then possess the cocaine. And, as in O’Connor, neither Adams’s purchase of the cocaine from the defendant nor his resale of it to a third party created an inference that the defendant agreed with Adams that Adams would resell it.
The State relies on Pallin v. State, 965 So.2d 1226 (Fla. 1st DCA 2007), to support the defendant’s conspiracy conviction. There, the First District ruled that multiple buy-sell transactions, standing alone, supported a conviction for conspiracy, reasoning that the buyer and sellers shared a common objective to purchase or possess cocaine because the sellers had to purchase and possess the cocaine before the buyer could purchase or possess a smaller portion of it. Id. at 1227-28.[1] We reject this reasoning because conspiracy requires an agreement to commit the same criminal act, and a seller’s purchase/possession of cocaine is not the same criminal act as a buyer’s subsequent purchase/possession of a portion of that cocaine. Accordingly, we certify conflict with Pallin.
The State raises two other factual bases to support the defendant’s conspiracy conviction: (1) evidence that the defendant gave his phone number to Moten to give to Adams, and (2) evidence that, during one of the defendant’s phone calls with Adams, the defendant alluded to anonymous third persons being involved in setting his selling price.
Regarding the first basis, the fact that the defendant gave Moten his phone number and that Moten agreed to give it to Adams does not support a conviction for conspiracy because, although Moten knew that the phone number was for the purpose of connecting Adams with the defendant so that Adams could purchase cocaine, there was no evidence that Moten knew or agreed to the quantity or other details of any prospective drug transaction. See Rodriguez v. State, 719 So.2d 1215, 1217 (Fla. 2d DCA 1998) (holding no conspiracy to traffic where defendant, who helped set up communications between buyer and seller, had no agreement with seller regarding sale of any specific quantity of cocaine); Williams v. State, 592 So.2d 737 (Fla. 1st DCA 1992) (holding similarly where defendant merely agreed *344 to participate in a “big deal”). While Mo-ten may have aided and abetted the transaction between the defendant and Adams, aiding and abetting is not sufficient for conspiracy. Young v. State, 940 So.2d 543, 544 (Fla. 5th DCA 2006).
Regarding the defendant’s allusion to anonymous third persons, “a defendant charged with conspiracy may be convicted of conspiring with persons whose names are unknown; however, the evidence must show that an unnamed cocon-spirator did exist and that the defendant conspired with him.” O’Connor v. State, 590 So.2d 1018, 1020 (Fla. 5th DCA 1991). Here, the evidence demonstrated that the defendant set the price at $26,500 for the sale of the first day’s kilogram, but he suggested that he would take $500 off the price for the second kilogram. However, when Adams called the next day, the following conversation occurred:
DEFENDANT: Um, you want to come see me or you need — hey, they all want to change on that — you remember I told you that half, man, they still want that half, man.
[[Image here]]
DEFENDANT: I mean, they want that half, man. I try. I try. You know what I mean? Hey, I try for you. You know?
ADAMS: Yeah. That’s all you can do.
These statements could raise an inference that “they” were one or more anonymous persons with whom the defendant conspired to sell the cocaine. However, no other evidence showed that “they” actually existed and that the defendant actually conspired with “them.” Therefore, the defendant’s reference to supposed anonymous third persons was not sufficient to support a conspiracy conviction. See Sheriff v. State, 780 So.2d 920 (Fla. 4th DCA 2001) (holding evidence insufficient to show conspiracy between defendant and his claimed supplier “Solon” because “no evidence at trial was presented that [the defendant] actually contacted or conspired with ‘Solon’ or that such a person even existed.”); O’Connor, 590 So.2d at 1020 (holding defendant’s reference to unidentified supplier insufficient to show that that person existed or that defendant conspired with him).
Accordingly, we affirm the defendant’s conviction and sentence for trafficking in cocaine, but reverse his conviction and sentence for conspiracy to traffic in cocaine.
AFFIRMED in part; REVERSED in part; CONFLICT CERTIFIED.
EVANDER, J., concurs.
ORFINGER, C.J., concurs in result only.

. Although the object offenses of the alleged conspiracies in Schlicher and Pallin were purchase or possession, those types of acts are included within the definition of trafficking. Thus, the different object offenses in those cases do not affect our analysis.